UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | | |
|---|---|---|
| ANA MARIA AGUIAR-ALCALA, | ) | No. ED CV 14-00778-VBK |
| Plaintiff, | ) ) | MEMORANDUM OPINION AND ORDER |
| v. | ) ) | (Social Security Case) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") erred in

        rejecting the opinion of a treating psychiatrist;

2.    Whether the finding that Plaintiff's testimony regarding her subjective complaints is not credible is supported by clear and convincing evidence; and

3.    Whether the ALJ correctly determined that Plaintiff is literate in English.

(JS at 7.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that for the reasons set forth, the decision of the Commissioner must be reversed and the matter remanded for a *de novo* hearing.

**I**

**THE ALJ ERRED IN REJECTING THE OPINION**

**OF TREATING PSYCHIATRIST DR. HUDSON**

Following a brief hearing held on December 19, 2012, at which time testimony was taken from Plaintiff, who was represented by counsel (not the counsel now representing her) and a Vocational Expert ("VE"). Plaintiff was assisted by an interpreter. (AR 42-64.) In an ensuing unfavorable Decision dated January 11, 2013 (AR 27-37), the ALJ followed the familiar five step sequential evaluation process outlined in 20 C.F.R. § 416.920(a). After determining that Plaintiff has not engaged in substantial gainful activity since the application date, the ALJ assessed the following severe impairments: obesity; degenerative spur formation and slight disk space narrowing in the lumbar spine; hypertension; and major depressive disorder. (AR 29.)

2

The ALJ next determined that Plaintiff does not have an impairment which meets or equals any of the Listings (AR 30), and then at Step Four determined that Plaintiff's residual functional capacity ("RFC") permits her to perform medium work with the exception that she can understand, remember and carry out simple job instructions, but would be unable to perform work that would require directing others, abstract thought, or planning. She can maintain attention and concentration to perform simple, routine and repetitive tasks in a work environment free of fast-paced production requirements. She can have occasional interaction with coworkers, supervisors and the general public. She can work in an environment with occasional changes to the work setting and occasional work-related decision making. (AR 31.) Finally, at Step Five, the ALJ determined that Plaintiff is not disabled and that there are alternative available jobs that she can perform. (AR 36.)

The mental health history indicates that on September 9, 2009, Plaintiff was seen by a clinical therapist at a community counseling center, where she presented "in crisis, crying and saying she has had suicidal ideations recently." (AR 282.) A mental status examination indicated difficulties with memory, paranoid thought content with auditory hallucinations; fair insight and poor judgment; a depressed/anxious mood; and a tearful affect. (AR 285.)

Plaintiff was then referred to treating psychiatrist Dr. Hudson on September 16, 2009. Dr. Hudson provided continuous psychiatric care for Plaintiff, meeting with her every 9 to 12 weeks, until October 2012. (AR 280-281, 402.) Dr. Hudson's initial mental status exam indicated that Plaintiff had depressed mood and affect, she was anxious and tearful, and the diagnosis was major depressive disorder,

3

recurrent, severe, with psychotic features, and a Global Assessment of Function ("GAF") score of 45. (AR 281.)

During an almost three-year course of treatment, Dr. Hudson examined Plaintiff an additional 14 times, and often adjusted her medications. In September 2012, Dr. Hudson wrote, "prior antidepressants: Paxil. Prozac, Effexor, Wellbutrin - all have been ineffective or with side effects." (AR 374.)

On August 24, 2011, Dr. Hudson completed a Medical Source Statement in which she concluded that Plaintiff had "poor" ability to understand and remember detailed/complex instructions; carry out instructions; work without supervision; and interact with the public, coworkers, and supervisors. (AR 270-271.) She indicated that her prognosis was guarded. (AR 271.)

Dr. Hudson also filled out a "Psychiatric - Psychological Impairment Questionnaire" on January 19, 2012. (AR 255-262.) Dr. Hudson diagnosed major depressive disorder, recurrent, severe, with psychotic features; assessed a GAF score of 45, and provided a guarded prognosis. (Id.) Dr. Hudson identified "positive clinical findings" which included poor memory; sleep disturbance; mood disturbance; delusions or hallucinations; anhedonia or pervasive loss of interests; feelings of guilt or worthlessness; difficulty thinking or concentrating; social withdrawal or isolation; and decreased energy. (AR 256.) Dr. Hudson further assessed that Plaintiff was "markedly" limited in 16 out of 20 areas of mental functioning; has moderate limitations in her ability to understand and remember one or two step instructions, to carry out simple one or two step instructions, and to ask simple questions or request assistance; and is "mildly" limited in her ability to be aware of normal hazards and take appropriate

precautions. (AR 257-260.) Dr. Hudson further assessed that Plaintiff was incapable of even low-stress work and would be likely to miss an average of over three workdays per month. (AR 260-262.)

On October 24, 2012, Dr. Hudson submitted a narrative report. (AR 402.) She referenced and reiterated the conclusions in her January 19, 2012 Psychiatric Impairment Questionnaire discussed above. The following portions of her narrative report are of particular significance in the Court's determination of the adequacy of the ALJ's rejection of her conclusions (see, infra):

> "In examining the claimant I found evidence of sleep and mood disturbance, social withdrawal, decreased energy, anhedonia, feelings of guilt/worthlessness, and difficulty concentrating. Her primary symptoms include crying spells, insomnia, nightmares, a depressed mood, social withdrawal, anhedonia, poor concentration and memory, with the latter four being the most severe."

(AR at 402.)

Dr. Hudson's narrative report further reiterated the previously noted "marked limitations" in numerous areas of mental functioning, as well as "moderate limitations" in other areas. (Id.)

In assessing Plaintiff's mental RFC, the ALJ provided the reasoning he relied upon to reject Dr. Hudson's conclusions. First, he found that these limitations were too restrictive "considering the claimant's admitted activities and the objective record. Recent treatment records noted the claimant acknowledged she was feeling better. The claimant admitted she was able to prepare simple daily meals. She admitted she spoke on the telephone regularly." (AR 34.)

5

Dr. Hudson's conclusions in her three reports as to Plaintiff's mental RFC were completely rejected by the ALJ, who found that they had "no probative value." As a basis for this wholesale disposal of Dr. Hudson's opinions, the ALJ opined, "The statements were not supported by the objective medical evidence as discussed above. The claimant recently admitted she felt better. She denied hallucinations." (AR 34.) Finally, as a third reason to reject Dr. Hudson's opinion, the ALJ engaged in a speculative discussion of the "possibility" that a doctor "may express an opinion in an effort to assist the patient with whom he or she sympathizes for one reason or another." (Id.) It was the ALJ's conclusion that where a medical provider's opinion "departs substantially from the rest of the evidence of record, as in the current case," it is likely that the medical opinion provided is, effectively, biased in favor of the patient.

In this case, many of Dr. Hudson's diagnostic conclusions differ from those of the examining consultative examiner, Dr. Ngati, along with non-examining sources. Consequently, according to Ninth Circuit law, while the opinion of a treating physician is entitled to the most weight, that opinion can be rejected or depreciated based only upon articulated "specific and legitimate" reasons supported by substantial evidence in the record. See Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Consequently, the Court's task here is to determine whether the articulated reasons in fact are specific and legitimate and are supported by substantial evidence in the record.

The first reason set forth in the Decision is that Dr. Hudson's conclusions were too restrictive considering Plaintiff's admitted

6

activities of daily living ("ADL"). The ALJ relied upon Plaintiff's admission that she could prepare simple daily meals, spoke on the telephone regularly, and could complete short tasks, such as easy chores. Examining the actual record, however, the simple daily meals to which Plaintiff admitted an ability to prepare were "sandwiches and frozen dinners." (AR 204.) Further, Plaintiff indicated she is only able to prepare food or meals when she is able. (Id.) She articulated that she cannot prepare less complicated meals because of her trembling and shaking hands. (Id.)

With regard to Plaintiff's talking on the telephone, she admitted to talking to her sisters once or twice a week. (AR 206.) Further, while the ALJ focused on the report of Plaintiff's son that she could do easy chores (AR 34, 215), the ALJ failed discuss the statements made by Plaintiff's son that Plaintiff does no household chores (AR 212-213); that she is able to go shopping for groceries, with her son's assistance, twice a month for about an hour (AR 213); that she loses concentration and has trouble understanding anything but very simple directions (Id.); that she is moody and irritable (AR 215); that she has a complete lack of social activities (Id.); and that she is unable to be by herself at all times (AR 216).

Based on the foregoing summary from the record, the Court concludes that the ALJ effectively cherry picked a few ADLs of which Plaintiff is capable, which led to an unsupported conclusion that Plaintiff's mental state was better than assessed by Dr. Hudson.

The same faulty methodology appears to be case with regard to the ALJ's assessment of Dr. Hudson's treatment notes and her three reports, which the Court has summarized. For example, the ALJ pointed out that Plaintiff recently admitted she felt better and that she

7

1  denied hallucinations. (AR 34.) The ALJ pointed to a statement during
2  a November 2012 examination in which Plaintiff said, in part, "I feel
3  better." As Plaintiff's counsel points out, the full statement
4  Plaintiff provided was that she felt better but, "The only thing is
5  that I feel like animals on my skin and then I see them out of the
6  corner of my eye." (AR 374.) Further, while Plaintiff largely denied
7  hallucinations, Dr. Hudson included hallucinations and delusions as
8  applicable symptoms, and in fact, Plaintiff obviously claimed
9  hallucinations in the quoted portion of the September 2012 exam cited
10 above.

   The ALJ's assessment of Dr. Hudson's reports is faulty because it fails to consider the reports as a whole, instead picking out isolated and out of context portions to support an opinion. This practice is unsustainable on appeal. See Holohan v. Massanari, 246 F.3d 1195, 1207 (9th Cir. 2001); Gallant v. Heckler, 735 F.2d 1450, 1456 (9th Cir. 1984); Vincent v. Heckler, 730 F.2d 1393, 1394-95 (9th Cir. 1984).

   Further, Dr. Hudson's analytic conclusion that the medications she had provided over almost an almost three-year period for Plaintiff's mental health functioning, which were often changed and adjusted, were ultimately ineffective, was supported by Plaintiff's own self-reporting during her meetings with Dr. Hudson. (See, e.g., AR 264, 265, 268, 272, 273, 274, 275, 276.)

   The ALJ also implies that Dr. Hudson's opinions were based on Plaintiff's subjective reporting, but that apparent conclusion is not borne out by careful review of the chronological treatment records and the three analytic reports that Dr. Hudson provided. Further, Dr. Hudson's statements about what she believes Plaintiff can still do despite her impairments is a medical source statement not prohibited

by regulations. See SSR 96-5p. Certainly, the ultimate determination of disability is reserved to the Commissioner, but this in no way forecloses a medical source from opining as to what a claimant is still able to do despite her impairments.

For the foregoing reasons, the Court determines that the ALJ's assessment of Dr. Hudson's opinions, which resulted in what can fairly be categorized as a total rejection of those opinions, is not based on specific and legitimate reasons. On remand, Dr. Hudson's opinions and conclusions will be evaluated according to appropriate legal standards.

**II**

**THE ALJ'S ASSESSMENT OF PLAINTIFF'S CREDIBILITY**

**IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE**

The ALJ depreciated Plaintiff's credibility as to her subjective symptoms. The Court must determine if the articulated reasons were specific, clear and convincing. See Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

The ALJ articulated as his first reason that, "First, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively benign medical evidence and other factors discussed in this Decision." Here, the ALJ is apparently largely referring to Dr. Hudson's treatment notes and opinions, which the Court has exhaustively discussed in the context of the first issue, finding that the ALJ's assessment of Dr. Hudson's notes and opinions is not supported by substantial evidence and must be determined de novo on

remand.

The Court agrees, also, with Plaintiff's counsel that as to Plaintiff's physical condition, primarily her back pain, the ALJ improperly depreciated the objective medical evidence. For example, he characterized her back problems as limited to "degenerative spur formation and slight disk space narrowing in the lumbar spine," while the objective records indicate a more severe level of foraminal stenosis.

With regard to the ALJ's assessment that Plaintiff's credibility is to be depreciated because of her appearance and demeanor at the hearing, while this does not, in and of itself, amount to "sit and squirm" adjudication, nevertheless, in view of the absence of any other valid, articulated factors to depreciate credibility, the ALJ's observations cannot stand on their own as a reason to depreciate credibility. Further, the ALJ's speculation that because Plaintiff had never worked, her limited range of daily activities is more of a "life style choice and not due to any established impairment" is unsupportable and speculative.

Plaintiff's credibility will be determined <u>de</u> <u>novo</u> on remand.

**III**

**THE ALJ'S DETERMINATION THAT PLAINTIFF IS LITERATE**

**IN ENGLISH IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**

The ALJ determined that Plaintiff has a marginal education but is able to communicate in English. (AR 35, Finding No. 7.) The Court cannot find that there is substantial evidence to support this conclusion. Plaintiff required the assistance of an interpreter at the administrative hearing, and testified to her inability to communicate

1  in English. (AR 42, 44, 48.) Further, there are intake forms from the
2  community counseling center which indicate that Plaintiff speaks
3  Spanish and will be assigned staff according to that limitation; the
4  consultative psychiatrist's report indicates that she only spoke
5  Spanish and that there was interpretation provided. (AR 250.) In any
6  event, while the Commissioner focuses on Plaintiff's testimony that
7  she could not read or write in English but could understand English
8  "[a] little – like basic things" (AR 35, 48), this does not translate
9  into a conclusion that Plaintiff "is able to communicate in English."
10 (AR 35.)
11      For the foregoing reasons, this matter will be remanded for a new
12 and further hearing consistent with the instructions and
13 determinations provided by the Court in this Memorandum Opinion.
14      **IT IS SO ORDERED.**

16 DATED: October 7, 2014                    /s/
                                      VICTOR B. KENTON
17                                    UNITED STATES MAGISTRATE JUDGE